## Case No. 7,306.

In re JEWETT et al.

[7 Biss. 328; [1] 15 N. B. R. 126.]

District Court, W. D. Wisconsin. Jan. 12, 1877.[2]

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

[2] [Affirmed in Case No. 7,307.]

De Witt Davis, S. U. Pinney, and I. C. Sloan, for petitioners.

W. F. Vilas, for E. D. & G. K. Jewett.

HOPKINS, District Judge (after stating the facts as above). E. D. Jewett & Co. rely upon these points to defeat the adjudication in this case. 1st. That they were not partners of S. A. Jewett; and 2d. If held to be partners, that their adjudication in the district court of Massachusetts is a bar to their being adjudicated bankrupts in this court. The counsel on both sides occupied a very wide range in their argument of the case, but I shall notice but few of the points discussed, as, in my opinion, many of them are unnecessary in the determination of the question now involved.

There is no direct testimony to establish the existence of the partnership of the bankrupts: that is, there is no partnership agree-

ment between them proved. If one can be made out, it must be from inference or implication. Taking the testimony of Samuel A. Jewett as true, there would be but little difficulty in solving that question, but as that is contradicted in some of its material parts by the other bankrupts, it becomes necessary to consider and carefully weigh it in connection with such contradictions. And in the first place I may say that the claim that he was to cut the lumber and pay three dollars stumpage, is not, I think, sustained by the evidence. The conduct of parties negatives any such agreement and confirms S. A. Jewett's denial. It is incredible that his brothers would have allowed him to work under such an agreement for over four years without ever calling upon him for any account, or ever investigating to see to what extent he was cutting their timber. The testimony shows also that three dollars is a much larger price than was being paid for stumpage in that region during that time. Again, if Samuel was doing business for them only under that stumpage agreement, they fail to show any excuse for not looking after their taxes during that period. For if Samuel did not represent them or their interest either as agent or partner, they would, it seems to me, have looked after their own interest and have seen that their taxes were paid. And as Samuel's conduct during that time accords with his testimony on that point, I think his evidence should prevail.

That pretense being disposed of, and that was the only ground upon which they relied to explain the manner in which the business was done and their indifference in relation to it, it becomes necessary to see whether a partnership can be established from the conduct of the parties, and the evidence of S. A. Jewett, and it must be said that S. A. Jewett's theory of the case is corroborated by all his acts and doings in the premises, and unless he was a partner, as he says, it is difficult to see in what character he acted, unless we hold that he was their agent, and to so hold, we should have to conclude he was clothed with the most general authority to manage their interest, that is, to charge them with such liabilities as might be necessary, proper and customary in carrying on that kind of business, which would be as extensive as the authority conferred upon one partner by another. That they had great confidence in S. A. Jewett is not denied. [Before 1869 he carried on their business without restriction, cut and used their lumber, ad libitum, erected buildings, and used the proceeds of the business at his discretion, without having any interest himself in it.] 5 And unless he had understood in some way that they were partners with him, he was guilty of gross fraud and dishonesty in representing them to be such, and get-

ting credit upon their joint names in the manner he did, and I do not believe, from his evidence and the conduct of the parties, that he did so, without their consent and authority. The manner in which they kept their accounts confirms this conclusion. If they had charged the money advanced directly to the firm of S. A. Jewett & Co., that would have been an acknowledgement of the existence of such a firm. In legal effect, however, the charging one-third to S. A. Jewett and two-thirds to Wisconsin land was the same thing. That recognized their liability to contribute two-thirds and S. A. Jewett one-third, which was according to their respective interests in the real estate, and the timber converted and sold by S. A. Jewett. If S. A. Jewett had been carrying on that business for himself alone, or as their agent, they would have charged the whole to him and made him pay it all to them. They were not liable for the expenses of the business simply because they owned a portion of the land, nor were they liable for any expenses if he was their tenant, agreeing to keep the mill in repair and pay stumpage as they claim. The way they kept their accounts is entirely inconsistent with any theory save that of partners. They were jointly interested in the land, in the growing timber; they were jointly interested in the mills, buildings and improvements for carrying on that kind of business; they made no agreement as to terms upon which anybody else was to use their property and cut their timber. So in view of the manner of keeping their accounts in reference to this property, in connection with the conduct and testimony of S. A. Jewett, I can see no other solution of the matter than to hold that they were partners.

There is another remarkable circumstance that requires notice. They must have known that their brother was carrying on this large business of over $100,000 a year, and to suppose that they allowed him to carry on a business of that magnitude for over four years with property of which they were the owners of two-thirds, without knowing the manner he was doing it, is too unnatural to be credited. Such indifference in regard to one's interest cannot be accepted by courts without the most satisfactory proof. The law presumes that every man will look after his own interest, at least, must hold him to ordinary care and attention to it, and to believe that they totally neglected, for such a period, such an amount of property as they had in this case, being a two-thirds interest in over 23,000 acres of pine lands valued at from one hundred thousand to two hundred thousand dollars, requires an unreasonable amount of credulity on the part of the court. And as they fail to furnish any reasonable excuse for such neglect, I think a court may accept the testimony of S. A. Jewett as showing the true relation between them. In

---

5 [From 15 N. B. R. 126.]

this case there is a community of interest, one of the essential elements of a partnership, and the other one, a sharing in the profits, may be inferred from the acts of the parties and the circumstances of the case where there is no express agreement to that effect. But in this case we are not left to inference on that subject, if the testimony of S. A. Jewett is true, for he says he used the profits for the joint benefit of the parties in making improvements and paying taxes; if his testimony is true in that respect, it is as binding upon them as if their share had been paid them in money, for as to the improvements, they enhanced the value of their interest, and as to the taxes, it was the discharge of a liability which they would have had to meet with their own money if he had not paid them out of such proceeds.

This seems to be the only reasonable conclusion to be drawn from the testimony. It was claimed that if they were not partners as between themselves, they were as to third persons who had given them credit on the strength of their being partners. This might be so, although to charge a person as partner in such cases, it is necessary to show that he was cognizant of the conduct of the party who represented him to be such partner. This is not shown here, but I think, as claimed by the petitioners, that a party by his neglect of an ordinary duty, as to look after his interest for an unreasonable length of time when he knows his property is in the hands of and being managed by a third person, may be presumed to have approved of the management of the person having it in charge, and, by such gross neglect, be estopped from denying the existence of the authority that the party claiming to represent him exercised.

In such cases neither community of interest nor participation in the profits is absolutely necessary. When a party holds himself out as a partner or permits another to hold him out as a partner and thereby procures credit upon the strength of his supposed relation, he is, on principles of natural justice, held to be such partner. But knowledge or notice of his being so held out must be brought home to him, or there must be proof of circumstances which will authorize a court to presume notice before he can be so charged.

The respondents' counsel claimed that the parties were only tenants in common. They were tenants in common of the real estate it is true, but S. A. Jewett must have been clothed with more power than a tenant in common possession over the common property to have transacted the business he did.

One tenant in common cannot sell the entire property; he can only sell his share, while a partner has authority to sell the whole. S. A. Jewett, the evidence shows, cut timber from the land, manufactured it into lumber, and disposed of it and the whole of it for a series of years, and that, too, with the knowledge of the other owners, and they must, in the absence of evidence to the contrary, be presumed to have acquiesced in and ratified his acts, which would be equivalent to an original authority, so that the claim of tenancy in common as to the business transacted by S. A. Jewett must fail.

He had more authority than is possessed by one tenant in common. He was clothed with an apparent right to manage and carry on the manufacture of lumber and buy and sell it, and such other things as are usually bought and sold in the conduct of that class of business, and by reason of such authority could bind his co-tenants by his acts and contracts in reference thereto, and having adopted the form and name of a partnership, I think, as to parties giving him credit under that name, he bound his co-tenants, and that their long silence may be construed into an acquiescence which would clearly as to third persons if not inter se create the relation of partners.

Both E. D. and G. K. Jewett professed too much ignorance in regard to the manner the business was transacted by their brother, more than seemed reasonable, and gave an air of improbability to their testimony, so that I must find that the defendants are, at least so far as third persons who have given credit, believing and relying upon their being members of that firm are concerned, partners, and liable to be proceeded against in bankruptcy, unless the second ground of defense relied upon is well taken.

This is a question of law, there being no dispute about the facts. E. D. Jewett, when the petition was filed in Massachusetts against the firm of Jewett & Pitcher, was a resident of St. Johns, New Brunswick, and George K. was a resident of Bangor, Maine, so that the district court of Massachusetts had no jurisdiction over them individually, nor over them as members of the firm of E. D. Jewett & Co., nor of the firm of S. A. Jewett & Co. Cameron v. Canieo [Case No. 2,340]. The court had jurisdiction of the firm of Jewett & Pitcher, a firm doing business in Boston, of which E. D. and G. K. Jewett were members, because that firm did business in Boston, and the proceedings were against it.

Now the question presented here is, does their adjudication as members of that firm prevent their being adjudicated here as members of the firm of S. A. Jewett & Co., a firm doing business in this state and including another party?

The discussion on this question took a very wide range, but it seems to me it is practically settled by the case of Amsinck v. Bean, 22 Wall. [89 U. S.] 395.

In that case one partner had gone into bankruptcy, and his assignee brought an action to recover back money previously paid to a creditor of the co-partnership, on the ground that it was paid in fraud of the pro-

visions of the bankrupt act against preferences.

The court say that in such a case the bankruptcy of one of the parties dissolves the partnership, but that "the solvent partners retain their full right, power and authority over the partnership property in the same manner and to the same extent as if no bankruptcy of a particular partner had occurred." Again, that although the decree in bankruptcy dissolved the co-partnership, "the joint property remains in the hands of the solvent partner or partners, clothed with a trust to be applied by him or them to the discharge of the partnership obligations, and to account to the bankrupt partner or his assignee for his share of the surplus."

This settles the status of the firm property of S. A. Jewett & Co., and shows that it could and should be retained by S. A. Jewett, after the decree of bankruptcy against his co-partners, with the same power over it as he had before, and the right to use it in the same manner, and that the assignee of Jewett & Pitcher had no right to interfere with it; that his interest was only in the residue, after the payment of the partnership debts of the firm of S. A. Jewett & Co., which overthrows the position of the respondents' counsel, that the assignee of Jewett & Pitcher took as tenant in common with S. A. Jewett, and it is therefore unnecessary to notice the list of authorities that were relied upon as establishing a different doctrine from that laid down in the above case, as that is binding upon this court.

The court in that case further say that "repeated decisions have settled the rule that an assignee of an estate of an individual partner has no such title as will enable him to call third parties to an account for partnership property. * * * That if money paid under such circumstances as a preference can be recovered back at all, it must be claimed by the partnership, in whose behalf it was paid, or by an assignee duly appointed to administer the joint estate as it is quite clear that neither an individual partner nor his assignee can call the party to whom such a payment has been made to account for such a payment any more than he could for any other debt due to the partnership."

This is a complete answer, it seems to me, to the objection of the respondents' counsel that a second adjudication could not be made. Unless such an adjudication can be had the firm of S. A. Jewett & Co. cannot be proceeded against in bankruptcy at all, and their assets cannot be administered by the bankrupt court, which would exempt a certain class of debtors from the operation of the bankrupt law. E. D. and G. K. Jewett were adjudicated in another interest and for the benefit of another class of creditors who have no standing in this case, neither had the creditors of S. A. Jewett & Co. any standing in the case where the first adjudication was made. The principle laid down by the supreme court in that case, carried to its logical results, authorizes an adjudication against all the parties here, for the reason that this is a different firm, composed of different parties whose creditors have wholly distinct rights which can only be protected and enforced by a separate proceeding.

The learned counsel for the respondents felt the force of these principles laid down in that case, and sought to avoid them by claiming that an adjudication of the other member of the firm would bring the case into this court, and that the assignees appointed in the separate cases could unite and recover all claims due this firm. I do not agree with him. Such assignees would not represent the firm. They could not marshal the assets under section 5121 United States Revised Statutes, that can only be done by the assignee in proceedings by or against the partners as such.

In cases against a firm, the firm creditors have the control of the proceedings, elect the assignee who primarily represents their interests, and where a party is a member of two firms, as in this case, I think he may be proceeded against and be adjudicated in both where both are insolvent and have estates to distribute.

In no other way can the provisions of the law be applied in both firms. The case of Hunt v. Pooke [Case No. 6,896] holds that a party who has been adjudged a bankrupt individually, may subsequently be adjudicated as a member of a firm, which is a direct authority on the question. It is true it is but an ipse dixit of the judge, his reasons not being given, but such is nevertheless his opinion.

In re Wallace [Case No. 17,095], Judge Lowell says he knows of no rule that authorizes proceedings in bankruptcy against parties who cannot be joined in a suit at law or in equity; that such proceedings are equitable, and the rule in relation to parties in that court should be consulted in bankruptcy cases. According to which decision the firm of S. A. Jewett & Co. could not have been joined in the proceedings against Jewett & Pitcher, nor could their estate have been administered there.

I am satisfied that, under the authorities, as well as upon principle, the respondents, E. D. and G. K. Jewett, may be adjudicated as members of the firm of S. A. Jewett & Co., notwithstanding their previous adjudications in Massachusetts as members of the firm of Jewett & Pitcher, and order a judgment of adjudication accordingly.

A good deal of discussion was had on the argument as to whether a partnership creditor could prove his debt against the estate of an individual partner, and if so, whether his discharge would relieve him from such debts. The authorities on that point seem to be somewhat in conflict. But I think the weight of authority is in favor of the view

that such debts can be proven, and that being provable, they are necessarily released by the discharge. Ex parte Crisp. 1 Atk. 134; Ex parte Elton, 3 Ves. 238; Ex parte Clay, 6 Ves. 813; Ex parte Chandler, 9 Ves. 35; Ex parte Bolton, 2 Rose, 389; Tucker v. Oxley, 5 Cranch [9 U. S.] 34 (opinion by Chief Justice Marshall under act of 1800 [2 Stat. 19], which was substantially like the present law); In re Frear [Case No. 5.074]; Hudgins v. Lane [Id. 6,827]; In re Milick [Id. 9,399]; Rev. St. U. S. §§ 5069, 5115, 5118.

A good deal of discussion was had also upon the question as to what property would pass to the assignee in this case if one was appointed. It is not necessary to consider that question at this time. That question will arise when an assignee is appointed and proceeds to take possession of property.

The question as to whether the assignee appointed in the proceedings against the firm of Jewett & Pitcher, took the interest of the firm of E. D. Jewett & Co. in this firm, is not now properly before the court, and is not considered on this hearing, but is left to be brought up and disposed of at the appropriate time.